Good morning and I will tell you the same thing I told the last panel. We do have another panel member. Justice Enoch was unable to be here today. She will confer with us and we will have a panel member. I am Mark Levine, the Office of the State Appellate Defender representing the appellate defendant John Riley. The fundamental question here is whether the trial court had a clean slate at resentencing. This court, as you know, remanded at a previous appeal for resentencing. So the question is, did the court on resentencing just get to start over as if it had never been there before? Or was there a carryover from the earlier proceeding? For two separate reasons, the court did not have a clean slate. First, Mr. Riley had a right to the benefit of his bargain. And second, imposing a new sentence for the same offense on resentencing that was more severe than the prior sentence. Didn't this court say in our reversal that we express no opinion as to the parameters of the resentencing? Yes, Your Honor, we did because the court did say that because the resentencing Won't that mean the top end and the bottom end? No, it means no opinion because that was not an issue with the law at first. Well, no parameters. I'm sorry? No parameters. The defendant challenged the sentence in that appeal because there was no pre-sentence report. The defendant did not challenge the length of the sentence. There was a procedural flaw in imposing the sentence, so it had to go back. Right. However, that was the length of the sentence to be imposed on remand was just simply not an issue in the first appeal. On remand, the cap is 23? On the first appeal, that was not an issue because the court had imposed that and nobody was arguing with it. So if the court expressed no opinion, it was because the court expressed no opinion. There was just nothing to have an opinion about. It wasn't an issue. But no opinion then, we did not mandate that the court impose no more than 23 years, correct? That's right. That's correct because it was not an issue. Yes, that's correct. And so when it goes back, there are things that a trial court can and should consider, and one of them being the pre-sentence investigation, which did not exist the first time around, correct? That is correct. All right. Now, one other question as we get to these, were either one of the issues that you're raising here today specifically preserved for purposes of this appeal at the trial court level? The first argument, the benefit of the bargain argument, is based on clear error. Okay. It was not preserved. The other argument is simply an excessiveness of sentence argument and the excessiveness of the sentence was raised in a post-sentencing motion, although not precisely this, but the sentence was challenged as excessive, which is what we're doing now in the second argument. But not, it was challenged as excessive, but not in violation, say, of North Carolina versus Pierce, that it was beyond. Well, that's why it's excessive, of course. Okay. Neither party sought the concurrence of the court initially for the 23-year recommendation, correct? That's, neither party sought the concurrence of the court, but the court, and this is a very, very fundamental point here, the court also did not tell the defendant that it would not be bound, and indeed... Well, that's because it was a trial. He's not, the court's not required to say anything about the sentence if it's a trial, other than what typical admonishments are in an arraignment that the defendant understands the nature. Except that the parties laid out, or the judge rather, laid out the first, this came after a 402 conference, and when they came back after the conference, the judge laid out in quite some detail the discussions and what the agreement... Right, that both parties would recommend, and a recommendation means a recommendation. It wasn't presented as a contract. Nevertheless, when they went into the 402 conference, the judge told the defendant that the disposition could be, would be, likely be discussed, and when they came out of the conference, everybody had agreed on this 23-year sentence. That's not accurate. The court did never, the court never said, I'm going to impose a 23-year sentence. I read the transcript. That is not said that parties, the state's agreement was that in exchange, which is a Stark's agreement, in exchange for you giving up certain constitutional rights, we will recommend a 23-year sentence. But the point... I understand your point. The point is, though, that the court never bound itself to that 23 years, and neither party sought the court's agreement. If that were the case, I think you'd have a compelling argument. Well, I do have a compelling argument, I have to say, because that is, that is the case. Although the judge did not say, I am hereby binding myself to this, nevertheless, the law is the other way around. I know this wasn't a plea, and I will address that soon, but in Rule 402, I think it's D3, it says that the court is bound unless he says he's not. There are cases on that. This is Baldridge. This is a 1960 case. I'm aware that those are plea cases. They are plea cases, and maybe I should jump right to that part of my argument right now to show that it doesn't, that it's not different. Unless you have more questions, I don't want to end this before you're ready. There is a line of cases distinguishing, that distinguishes guilty pleas from stipulated bench trials. We're all aware of these, Campbell, Clendett, and lots and lots of cases. But the distinction in that line of cases is not applicable here, because they're addressing a different concern. Now, over there, in all those cases, the defendant is trying to get out of a deal. He's trying to withdraw, he's trying to withdraw his guilty plea. Therefore, the court's analysis looks to whether his plea was knowing and voluntary. Hence, the 402 admonitions and so on. Hence, all those cases that say the admonitions are not necessary if it's not a plea. And why is this? It's because of the very highly developed law of pleas and all the rules that have gone into effect in order to make sure that a plea is knowing and voluntary. The question here is different, because the defendant is not trying to get out of the deal. Instead, he wants the benefit of the bargain. He's not trying to back out. Maybe the judge is trying to back out. The judge is trying to back out, but the defendant is not. Well, are you saying that simply because the judge agreed to the 402 conference, and the defendant agreed to the 402 conference, that that binds the court? No, certainly not. Okay. Well, then how is the court bound? Most of the time, the court will tell the defendant when the deal is presented, I'm not bound. And then the court is not bound. The court does not have to be bound. Here, however, the court did not say that. Because it was still going to hear some evidence, albeit stipulated evidence, but it was still going to hear evidence and not only hear evidence but see other things that it did not see in the first proceedings, the victim impact statement. I'm looking at the whole big picture here, but there are other things that come in. And the defendant in this case simply stipulates that that's what the state would present but does not stipulate that that was sufficient to find him guilty. And the judge said, as part of this whole thing, and it's 99.99999% likely that I will find you guilty, and everyone was proceeding as if that is what was going to happen because the defendant was trying to preserve a suppression issue that, and I did the first appeal and it was just frankly no merit in that. In the first appeal, why did they even bring up the sentencing issue if the defendant wanted the benefit of the quote-unquote bargain? Thank you. Haven't you backed yourself into a corner? No. Let me tell you why. Because, well, let's first say, you've read my brief and I'm analogizing to Whitfield, which is, of course, a plea case. The law in Whitfield, first of all, I'm not arguing in derivation from the law of pleas. Rather, instead, the law of pleas, and here, derives from the law of contracts and fundamental fairness in due process. It all comes out of contract law. So we're not getting this from the plea cases. Instead, both this case and the plea cases are getting it from the same more fundamental place. The parties to this bargain were the State and the defendant. The parties to the bargain did not include the court, which in the plea agreement, the court approves the contract. The court says, I will go along with this. That's not what happened here. I find it akin to Starks or looking at Starks where the State says, if you take a polygraph and you pass, we will dismiss these charges. The State's bound by that agreement. Here, the State said, look, you give up your right to a jury and you waive your right to confront witnesses. We will agree, if you're found guilty, that we'll recommend a 23-year sentence. The State benefits because they don't have to assemble the evidence. They don't have to put the victim through the trauma of a trial. So the State benefits, and the defendant is now guaranteed the State's recommendation, and that's the way it was presented, a recommendation. Not you will be sentenced to 23 years. The court said what the agreement was, that both parties would recommend a 23-year sentence. But what would a reasonable person in the defendant's position think over here? They're waiving the PSI, or they're waiving all of the statement of criminal record and so on that's normally presented in these things. Why are they doing this? Because everybody, it's settled. We know what the sentence is going to be. That's how it appears from the defendant's point of view. It happens all the time. Cap agreements happen all the time. They happen every day. It was settled the first time. That's right. But in this case, there was a pre-sentence. There was a victim impact statement. There was some information about his conduct while in custody. So let me address that. Now that I get into the bulk of that, I want to get to the second argument. Still, it's applicable here if we're still on this first argument. He didn't abandon the State. I know the State argues that he abandoned the agreement, his bargain. If he had a bargain, he abandoned it, the State says, by asking for less. But what this is like, if there was a contract, in contract principles, if a person goes into a bakery and he pays for a dozen rolls and the baker puts them in the bag and then the customer says, I'd really like you to throw in a few more for free. Now at that point, the baker has discretion. He can say, no, forget it. We have a deal. This is the price. We've already concluded our bargain. That's it. Or the baker could say, you're a good guy. I'll give you a few more. The baker has discretion, just like the court here had discretion. What the baker cannot do in that case is say, Ah, since now you're asking for a few more for free, you've voided the deal, and now the price is more than we'd agreed on, so I want you to pay me some more for the original dozen rolls. Nobody would say, under contract principles or any kind of sense of fairness anywhere, that that would be okay. Asking for some freebies doesn't void the deal. Certainly the baker can say no. Certainly the court could say no. But it's like in Whitfield, where under contract principles, again, I'm not deriving this from plea law but from contract principles. In Whitfield, they all agreed to something that the law did not allow, a sentence without MSR. So what's to be done? By contract and fundamental fairness, the defendant was entitled to the benefit of his bargain. But we have a statute here. They can't waive MSR. The court, the parties, nobody could waive the MSR. So what are we going to do? Same thing here. There's a statute that says a felony sentence cannot be imposed without either a statement of the criminal record or a PSI. But they did it. So what are we going to do? What the Supreme Court did in Whitfield is to try and find a way to comply with both the statute, because we've got to comply with the statute, it's mandatory, and also to give the defendant the benefit of his bargain. Here, the 23 years can be seen as a cap on the sentence. The court, and this court said in its previous opinion that it's a matter within the court's discretion. Yes, it is. Just like the baker had discretion to throw in a few freebies, so the court had discretion to sentence him to less than 23 years based on all the mitigation that was presented at the resentencing hearing. Could the defendant insist on that? No, of course not. But by asking for it, he was just asking. And the court could have given it to him if, of course, the state had agreed, because the state was a party to this deal too. Now, the state also could have agreed. If they had said, you know what, this makes sense. The state has discretion. They don't have to demand the maximum sentence all the time. They could ask for less. So the state had discretion. The court had discretion. The defendant is just asking, give me a break here. I'm a good guy. I'm going to have a job when I get out, so give me a more lenient sentence than what I bargained for. Essentially, give me a freebie. The sentence agreement was a cap. And because, and I see that my time is up, and I haven't even reached the second argument, so let me, if I may have 30 seconds to say something on the second argument. The second argument is also why the sentencing court did not have a clean slate on resentencing. Now, if the first argument is digital and we say that this one is analog, is there enough here to overcome the presumption of vindictiveness, and that's the U.S. Supreme Court's word, when a harsher sentence is imposed on remand. The record has, and that was in Pierce, in Alabama v. Smith, the court refined it a little bit more to say it doesn't necessarily have to be behavior since the previous sentencing. It's just the court knows more. So here you can say, okay, the court knows more. There was a PSI. But what was in the PSI? We find out from the PSI that Mr. Wiley had a little criminal record. He had a speeding ticket. He had a misdemeanor battery. He had an aggravated fleeing, eluding, but we don't know any of the facts about this. It's not in the record. Since the previous one, he possessed unauthorized possession of 100 salt and pepper packets in DOC. The victim impact statement about what happened to the victim, it hurt. It was terrible. The judge comments on how horrible it was. Of course it was. But the judge had all of this before the original sentencing, too. That was known to everybody when the original 23 was imposed. In fact, the judge didn't even mention the victim impact statement on resentencing. So for what we have here, this can justify an additional four and a half years? No. That's why that was an abuse of discretion to add four and a half years on resentencing, regardless of whether there was a bargain originally. Thank you. You have an opportunity to respond after Ms. Joseph. Thank you very much. Good morning, Your Honors. Victoria Joseph on behalf of the people of the state of Illinois. May it please the court? Counsel? I think Your Honors pointed to one of the key things as far as their first issue on this benefit of the bargain, that the bargain was this recommendation that existed between the defendant and the people. The court commented that they would proceed to sentencing where the parties would recommend the 23 years. This was a stipulated bench trial. Even though there was a comment from the trial judge saying 99.9999, what a continuing percent that you will likely be found guilty, there's still a speculative statement when he says, I will determine your guilt or innocence and you are agreeing to these stipulated facts, as in not that you are agreeing to the truth that this is what happened, but you are agreeing this is what the witnesses would say. So it still gives the trial judge the opportunity to weigh the reasonableness of what the facts are and the way he wants to give certain facts. So the 402 admonitions were not required here. There was not an agreement between the court and the defendant. It was between the people and the defendant. When they came back for resentencing, the people did maintain their 23 years. That is when the defendant asked for 10. So there's no- Just a general due process argument that the way the whole thing was presented, and it was a plea conference despite the fact that there was not the traditional, it's not a traditional plea agreement because it was a stipulated bench trial, but the court has a conference with the attorneys to arrive at a disposition, and ordinarily arriving at a disposition is not just the determination of guilt, innocence, what class felony, whether it's going to be a reduction, but also what the parties agreed to with regard to a sentence. And then he gets 27 years as opposed to the 23 that he thought he was going to get. Just in terms of fairness and due process, especially when it's the court who's laying out the agreement. In most plea agreements, the state's attorney steps up and says, Judge, we've arrived at an agreement. Here's the parameters. Here, the judge lays it all out. The judge says that this is what the parties have told me, that we are going to proceed to doing this, and the parties will come forward and recommend. This sentence and why they wanted to proceed the way they wanted to proceed, and the defendant agrees that is what he wished to do. I guess maybe the question that Justice Burkett's asked and the one I have is, when you do this most of the time, or the majority of the time, the parties come forward with a stipulated bench trial, the court really isn't involved. That's not usually. Not usually. I'm not saying not ever, but not usually the basis of a 402 conference is we're close. We agree. The big agreement here was that the defendant was not agreeing that he was guilty. No. He was agreeing to stipulate that this is what the witnesses would say, but he wasn't agreeing he was guilty. He was not agreeing he was guilty. So why did they use the 402 conference, and what does this look like using the 402 conference? And maybe it's not explained by the record, but that is an issue. I know the parties asked for the 402 conference, the trial, and that was in January 7th because this was following the denial of the motion to suppress the evidence, and it seemed like the defense at that time was very hung up on this motion to suppress evidence, and even in their motion for new trial, it was the evidence is insufficient to convict. Well, had you granted my motion to suppress without that confession, the evidence is insufficient to convict. So I don't recall from the record I'm not getting a full sense of why they wanted to go there, but likely you go into them seeing what the judge is going to do about it. That's typically why you enter the 402 conference, to see if you're going to get what you're asking for. But he never, as he walked in that door, and maybe this is a question more addressed to Mr. Levine, but he never intended to plead guilty, correct? No. Even before they entered the stipulations, defense counsel said there would be a motion for new trial. And again, the motion for new trial was based on the fact that the evidence was insufficient if this confession that we believe was improperly entered hadn't been there. So, no, he was not agreeing, and he was not agreeing that even the stipulations were the truth, because the judge made clear you're not agreeing they're telling the truth when they say that, but they are saying those. So you're agreeing this is what the testimony would be. You're not agreeing that the testimony is truly what happened. Correct. In your arguments, both of your responses to the two arguments raised by counsel, you used plain error. Yes, Your Honor. Now, in the first argument, plain error was raised by appellant. Was it raised in the second one? Was the issue of plain error raised in the second one, or was it strictly excessive? Because you addressed plain error. Yes. And candidly, I searched through and could not find where Mr. Levine was alleging plain error in the second. Did you do that as a precaution? I did not. I did that as a precaution, Your Honor, because of how the motion to reconsider a sentence was presented as excessive, and generally the case law says you have to argue with specificity, and you came back on appeal arguing with specificity that this was an error under Pearson-Smith, that because it wasn't argued as such below, that it was the precaution of using plain error. So I ask this of Mr. Levine, and I'll ask it of you. Do you believe that North Carolina v. Pearson, anything that follows, specifically addresses that it is plain, by simply invoking the case, you're raising plain error, or is it an excessive argument that raises the plain error, or is it just an excessive argument? I guess that's a loaded question, but. Just looking at the posture of some of the cases underneath, and without knowing factually in a lot of these cases what, if anything, was raised in a motion to reconsider a sentence, and seeing how it was argued, the arguments are very narrowly tailored to this presumption of vindictiveness, that the court improperly raised the sentence and not necessarily couching it in an excessive sentence. And I think that because of the distinction in how the cases were handled, that is why the people presented it under plain error. And in this case, we have the statute that says you cannot, the 554, that you cannot impose a new sentence that is more severe unless it is based on conduct occurring after the original sentencing, which is basically codifying Pierce and then Bays. But you do have the Smith case, the Alabama v. Smith, which is talking about where the presumption of vindictiveness lies. And there they talked about this reasonable likelihood of vindictiveness. And I think here, where you have, you're going back for a resentencing, you've now directed the court that you didn't consider these things that you should have done before. You've now properly considered it and looked at the pre-sentence investigation. You've looked at the victim impact statement. You've heard evidence in mitigation. The defendant has now read a statement in allocution. And you do have conduct occurring after sentencing, which was a proper consideration before the court. And the court considered that the presumption of vindictiveness has now returned to the defendant to prove. They now have the burden to rebut and prove actual vindictiveness. And that was not done in this case. And because of that, Your Honor, that the increase in sentence was neither plain error nor have they shown an abuse of discretion. You would agree that the state could not have recommended anything higher than 23 years, correct? They were bound by their original recommendation. If you're looking under they made a contract and they agreed to proceed in the manner in which they proceeded in that defendant was giving up his rights to proceed to that agreed sentence, then they were bound by that. And they did maintain that sentence when they came back for resentencing. And, of course, if this court does find there is error, Bays sets out the remedy that this is sent back for resentencing by the trial judge, likely with the directions that it needs to be compliant with both 531 and 554. Now, although the matters in the pre-sentencing investigation as well as the victim impact statement did not occur after the original sentencing, the court needed to consider them, correct, because they had not considered them before. They had to consider. And that's where the people addressed in their brief. There's a little bit of a hands being held behind your back when you screw up on the 531 and you have to go back and reconsider this. You can't, under 554, you can't use that information to impose a harsher sentence. And the people recognized that there is, you have to do both. You have to be compliant with both under the legislature at this point. But in this case, you did have some conduct on the defendant's behalf that affirmatively appears in the record. It's an objective consideration. However, I think in the fact that you're looking at the reasonable likelihood of the entire proceeding showing vindictiveness, that is where you can consider the fact that the judge properly followed the 531 proceedings that time. Thank you, Your Honors. Mr. Levine. Your Honors raised plain error up here. I did not raise it in the second argument. The second argument is based on the court abusing its discretion by adding four and a half years to what it had imposed the first time. Well, doesn't it have to get here? I mean, it has to be preserved in some way. So how is it preserved? Simply by, or you're saying it's not void. You're not saying it's void, so you're not attacking it on that basis. You're attacking it on excessive. Shouldn't that still have been preserved in some way in any post-stipulated bench trial hearings? Well, there was, of course, a post-sentencing hearing on remand in which defense counsel, if you read the record over there, very, very reluctantly seemed to be apologizing for raising anything at all on behalf of his client. He didn't raise specifically this, but at least he did say that it was excessive. On appeal, our claim is still that it was excessive, and we give a reason why it's excessive. Now, if it's plain error, of course, you don't need me to say it. If it's plain error. But I'll say it, if necessary, we'll raise it right now. I don't know that that's necessary. Because mainly the argument on the second issue is that it was just abuse of discretion to increase the sentence by four and a half years, given all that had come before and the lack of any, the lack of the thinness of the new evidence. His sentence already at the first time, 23, was near the top of the range. The range was 6 to 30. This is nearly four times the minimum in the first place. So that he had a little criminal, had some criminal record, could not have been a huge shock to the, to the court. The state already knew about it. And I do want to say clearly that we're not contending that the state did anything wrong. The state did, the state did everything right here. They held to their agreement. They did everything. They did everything right here. The remedy does not need another remand. We already know what the trial judge will do on remand. He's not inclined to go below the cap of 23. We already, that's been established. So the court, the remedy that we're seeking is for the court to exercise its authority under 615 to reduce the sentence to the original 23 years. And if I have any time left over here, just see if your, your honors have any questions for me. Thank you very much. Thank you. I thank you for your argument. We will take the matter under advisement. We will make a decision in due course. We will now stand adjourned for today. Thank you.